# EXHIBIT A

# EXHIBIT A

Electronically Issued
12/27/2017 1:42 PM

**SUMM**
SCOTT OLIFANT, ESQ.
Nevada Bar No.: 7471
TCM LAW
1614 S. Maryland Pkwy.
Las Vegas, NV 89104
Telephone:    (702) 462-6161
Facsimile:    (702) 413-6255
Email: info@tcmlawgroup.com
*Attorneys for Plaintiff*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

JENNA L. CARNEY, an individual;

        Plaintiff,

    vs.

IQ DATA INTERNATIONAL, a Washington Corporation; SENTRY RECOVERY & COLLECTIONS, INC. a Nevada Corporation; MG PROPERTIES GROUP, a corporation of unknown place of incorporation, d/b/a Sedona Lone Mountain Apartments, d/b/a/ Azure Villas II apartments; FORE PROPERTY COMPANY, A Nevada Corporation, d/b/a Glenbrook Terrace; ANZA MANAGEMENT COMPANY, a California Corporation, PICERNNE REAL ESTATE GROUP, a privately held corporation of unknown state of incorporation d/b/a Pavillions at Providence Apartments, SW LANDLORDS, a business entity of unknown form, THE CROSSINGS AT LAKE MEAD, an apartment complex of unknown form or identity of ownership, and DOES 1 THROUGH 10 AND ROE CORPORATIONS 11 THROUGH 20, INCLUSIVE.

        Defendants,

Case No.:  A-17-761858-C
Dept. No.:  II

## SUMMONS

**NOTICE!  YOU MAY HAVE BEEN SUED, THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

1

**TO THE DEFENDANT, IQ DATA INTERNATIONAL:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1. If you intend to defend this lawsuit, within 20 days after this summons is served on you, exclusive of the day of service, you must do the following:

A. File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.
B. Serve a copy of your response upon the attorney whose name and address is shown below.

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivision, agencies, officers, employees, board members, commission members and legislators, each have 45 days after service of this Summons within which to file an answer or other responsive pleading to the Complaint.

Submitted by:                                            Issued by:
TCM LAW                                                  CLERK OF COURT



SCOTT OLIFANT, ESQ.                        By                           12/27/2017
Nevada Bar No. 7471                         Deputy Clerk                Date
1614 S. Maryland Pkwy.                      Regional Justice Center
Las Vegas, NV 89104                         200 Lewis Avenue            Shimaya Ladson
Telephone:     (702) 462-6161               Las Vegas, NV  89155
Facsimile:     (702) 413-6255
*Attorneys for Plaintiff*

2

Electronically Filed
9/20/2017 4:15 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
THOMAS C. MICHAELIDES, ESQ.
Nevada Bar No.: 5425
CONSTANTINA V. RENTZIOS, ESQ.
Nevada Bar No. 13747
TCM LAW
1614 S. Maryland Pkwy.
Las Vegas, NV 89104
Telephone:     (702) 462-6161
Facsimile:      (702) 413-6255
Email: tcm@tcmlawgroup.com
*Attorneys for Plaintiffs*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

JENNA L. CARNEY, an individual;

        Plaintiff,

vs.

IQ DATA INTERNATIONAL, a Washington corporation; SENTRY RECOVERY & COLLECTIONS, INC., and; DOES I-X and ROE CORPORATIONS XI through XX, inclusive,

        Defendants.

Case No.:  A-17-761858-C
Dept. No.:  Department 2

## COMPLAINT

COMES NOW, Plaintiff, by and through their counsel of record, Constantina V. Rentzios, Esq. of TCM Law and for their causes of action, allege as follows:

### GENERAL PROVISIONS

1.    Plaintiff, JENNA L. CARNEY, at all times relevant hereto, was and is a resident of the State of Texas, who has been the subject of numerous thefts of identity by persons unknown but located in Clark County, Nevada.

2.     Defendant, IQ DATA INTERNATIONAL, INC., at all times relevant hereto, a business incorporated in the State of Washington, and conducting business in the State of Nevada, within Clark County.

3.     Defendant, SENTRY RECOVERY & COLLECTIONS, INC., at all times relevant hereto, a business incorporated in the State of Nevada, and conducting business in Clark County.

4.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES I through X and ROE CORPORATIONS XI through XX, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names; Plaintiff is informed and believes and therein alleges, that each of the Defendants designated herein as DOE and ROE are responsible in some manner for the events and happenings referred to, and caused damages proximately to Plaintiff, and Plaintiff will ask leave of the Court to amend the Complaint to insert the true names and capacities of DOES I through X and ROE CORPORATIONS XI through XX, inclusive, when the same have been ascertained, and to join such Defendants in this action.

## JURISDICTION

5.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

6.     That the foregoing causes of action are related to activities, communications and contracts performed within Clark County, Nevada and that Defendants are residents/business entities in Nevada.

7.     This Court has subject matter jurisdiction over this proceeding and venue of this action is proper.

## GENERAL ALLEGATIONS

### Introduction

TCM LAW
1614 S. Maryland Pkwy.
LAS VEGAS, NEVADA 89104
TEL: (702) 462-6161 – FAX: (702) 413-6255

8.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

9.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

10.     Unfortunately, however, this information has also become readily available for, and subject to, mishandling, misuse, theft or other nefarious conduct.  Individual consumers can sustain substantial damage both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

11.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

12.     These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

### The Fair Credit Reporting Act

13.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to

TCM LAW
1614 S. Maryland Pkwy.
LAS VEGAS, NEVADA 89104
TEL.: (702) 462-6161 – FAX: (702) 413-6255

assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

14.    The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.* * * * *[A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

15.    To further the primary goal of greater accuracy, the FCRA has also required CRAs, as well as "furnishers" of credit information to the CRAs, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

## The Fair Debt Collection Practices Act ("FDCPA")

16.    In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Among the several possible violations that CRAs may incur as a result of the FDCPA, the FDCPA prohibits the reporting of false information, and which action constitutes a deceptive act of practice.

## Nevada's Deceptive Trade Practices Act

17.    Nevada has similarly adopted and codified the Uniform Deceptive Trade Practices Act, with making its own modifications as passed by the legislature. NRS 597 – 598C, *et seq.*

TCM LAW
1614 S. Maryland Pkwy.
LAS VEGAS, NEVADA 89104
TEL - (702) 462-6161 – FAX: (702) 413-6255

4

Specifically, NRS 598.701 - .787 apply to "credit service organizations" and "reporting agencies." These terms carry the same meaning as the similar federal laws in the FCRA ad FDCPA.

18... Similar to the FCRA and FDCPA, NRS 598C.160 specifically requires verification of a claimed debt or reporting entry at the behest of a consumer who has complained of an inaccuracy reported to the credit bureaus. Also in accord with the FCRA and FDCPA, NRS 598C.160 allows for actual damages, punitive damages, costs and reasonable attorney's fees for violation of these provisions.

19. This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff against Defendants for their willful and/or negligent violations of the FCRA, FDCPA and Nevada law, as described herein.

## FACTUAL ALLEGATIONS

20. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

21. Plaintiff is an adult individual presently residing in Texas, who is a "consumer" as defined in the FCRA, FDCPA and applicable Nevada statutes.

22. Defendants are "consumer reporting agencies", "furnishers" or other similar descriptors, which provide information to businesses and the credit reporting bureaus.

23. That Plaintiff has been the victim of identity theft, which has resulted in many false reporting to credit reporting agencies, furnishers and other associated parties. These false reportings have been proliferated by the Defendants.

24. Plaintiff has requested that Defendants investigate or reinvestigate entries claiming that she was evicted from apartments located in Nevada, and/or that she owes money for these purported breaches of leases, that she in fact never executed.

25.     During this same time, Plaintiff has been a subscriber of Lifelock.  Under the terms of service with Lifelock, Plaintiff is notified every time a credit application in her name is processed. However, Plaintiff never received a notification that her credit was being processed by the apartment complexes or companies which are not reporting that she was evicted or owes a debt.

26.     Plaintiff believes that these companies or the underlying creditor failed to properly process a credit report inquiry, and have now reported falsely the information that she is an obligor to these supposed debts.

27.     Notwithstanding these errors and requests for reinvestigation, Defendants continue to represent in violation of the FCRA, FDCPA and Nevada law that these credit entries are true and correct, which has damaged the Plaintiffs ability to obtain new credit and negate the disparagement to her credit worthiness.

28.     As a result of the wrongful actions of the Defendants, Plaintiff has been damaged in an amount in excess of $10,000.00.

29.     It has become necessary for Plaintiff to engage the services of an attorney to commence this action and Plaintiff is, therefore, entitled to reasonable attorney's fees and costs as damages.

## FIRST CAUSE OF ACTION

### (Violations of the FCRA)

30.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

31.     Pursuant to the FCRA Defendants are credit reporting agencies ("CRA") and/or furnishers.

32.     Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

6

33.     Section 1681*o* of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

34.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681*e*(b).

35.     On numerous occasions Defendants have prepared patently false consumer reports, or assisted in providing false information for insertion on consumer reports, regarding the Plaintiff.

36.     On each such instance, Defendants willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

37.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

38.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

39.     Through Plaintiff's communications with Defendants, Defendants know, or have sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is extremely inaccurate and damaging to Plaintiff. Nevertheless, Defendants have taken no measures to stop painting a false and damaging picture about Plaintiff.

TCM LAW
1614 S. Maryland Pkwy.
LAS VEGAS, NEVADA 89104
TEL.: (702) 462-6161 – FAX: (702) 413-6255

7

TCM LAW
1614 S. Maryland Pkwy
LAS VEGAS, NEVADA 89104
TEL.: (702) 462-6161 – FAX: (702) 413-6255

40.     Plaintiff believes that Defendants either failed to conduct a proper reinvestigation, or that the reinvestigation was so shoddy, as to allow objectively false and highly damaging information to remain on Plaintiff's credit profile.

41.     Plaintiff remains unable to obtain credit and other financing because of the grossly inaccurate credit file which contains this false information.

42.     Plaintiff has suffered out-of-pocket loss as a result of Defendant's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service.

43.     As a direct and proximate result of Defendant's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

## SECOND CAUSE OF ACTION

### (Violations of the FDCPA)

44.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth hereinafter.

45.     In connection with the collection of a debt, Defendants, directly or indirectly, have used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to, the following:

   a.     In numerous instances, Defendants, directly or indirectly, have used false representations concerning the character, amount, or legal status of a debt, in violation of Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A); or

b.   In numerous instances, Defendants, directly or indirectly, have failed to communicate to the CRA to which it reported a debt that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. § 1692e(8).

46.   The acts and practices alleged in Paragraph 37 constitute violations of Section 807 of the FDCPA, 15 U.S.C. § 1692e.

47.   As a result of the wrongful actions of the Defendants, Plaintiff has been damaged in an amount in excess of $10,000.00.

### THIRD CAUSE OF ACTION

#### (Violation of Nevada of Deceptive Trade Practices)

48.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

49.   Pursuant to NRS 598.746 credit service organizations or reporting agencies are prohibited from reporting false information regarding a person's credit history or wrongfully represent that they are entitled to collect on a debt which is submitted in error.   These violations constitute deceptive trade practices. NRS 598.787.

50.   If these entities fail to abide by these statutes they are liable for damages, costs of prosecuting the case, injunctive relief and punitive damages. NRS 598.777.

51.   NRS 598C.160 specifically requires verification of a claimed debt or reporting entry at the behest of a consumer who has complained of an inaccuracy reported to the credit bureaus. Similarly, violations of this statute are grounds for damages, costs of prosecuting the case and punitive damages. NRS 598C.190.

52.   As described above, Defendants have engaged in these deceptive trade practices by asserting debts that are not owed and unlawfully verifying the accuracy of those debts, which are the

9

actual result of identity theft.  Therefore, Plaintiff is permitted to the damages so described in the referenced statutes and other damages at common law.

## FOURTH CAUSE OF ACTION

### (Injunctive Relief)

53.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

54.    Pursuant to NRS 598.777 a buyer or consumer injured by a violation of the Nevada Deceptive Trade Act is entitled to an injunction.  As Defendants have violated the mentioned statutes above, among others, an injunction should issue prohibiting the false reporting of the debts which are not the Plaintiff's nor been verified.

55.    Plaintiff is also entitled to an injunction on common law principles because she has been irreparably harmed as monetary damages cannot fully make her whole, she has a strong likelihood of success on the merits, the balance of harms are in her favor, the public is well served by preventing erroneous credit reporting and collection and she is willing to post a bond if necessary.

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1.    For compensatory damages in a sum according to proof at trial;

2.    For special damages in a sum according to proof at trial;

3.    For attorney's fees and costs of suit herein;

4.    For punitive damages in favor of Plaintiff;

5.    For injunctive relief in favor of Plaintiff;

6.    For an award of Plaintiffs' attorneys' fees and costs to the full extent allowed by Nevada law; or in the event of default, not less than $5,000.00 (representing fees and costs incurred through the entry of default);

6.     For an award of pre- and post-judgment interest to the full extent allowed by Nevada law;

7.     For any and all other damages which may be permitted under the FCRA, FDCPA or Nevada law; and

8.     For such other and further relief as this Court deems just and proper.

Dated this 20th day of August, 2017.

TCM LAW

By:     /s/ Constantina V. Rentzios
        CONSTANTINA V. RENTZIOS, ESQ.
        Nevada Bar No. 13747
        1614 S. Maryland Pkwy.
        Las Vegas, NV 89104
        *Attorneys for Plaintiff*

11

Electronically Filed
9/20/2017 4:15 PM
Steven D. Grierson
CLERK OF THE COURT

IAFD
THOMAS C. MICHAELIDES, ESQ.
Nevada Bar No.: 5425
CONSTANTINA V. RENTZIOS, ESQ.
Nevada Bar No. 13747
TCM LAW
1614 S. Maryland Pkwy.
Las Vegas, NV 89104
Telephone:    (702) 462-6161
Facsimile:    (702) 413-6255
Email: tcm@tcmlawgroup.com
*Attorneys for Plaintiffs*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

|  |  |
|---|---|
| JENNA L. CARNEY, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>IQ DATA INTERNATIONAL, a Washington corporation; SENTRY RECOVERY & COLLECTIONS, INC., and; DOES I-X and ROE CORPORATIONS XI through XX, inclusive,<br><br>Defendants. | Case No.:   A-17-761858-C<br>Dept. No.:   Department 2 |

### INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

Plaintiff                                  $270.00

TOTAL                                  $270.00

Dated this 20ᵗʰ day of September, 2017.

TCM LAW

By:   /s/Constantina V. Rentzios
        CONSTANTINA V. RENTZIOS, ESQ.
        Nevada Bar No. 13747

1

Case Number: A-17-761858-C

**Electronically Filed**
**11/14/2017 10:07 AM**
**Steven D. Grierson**
**CLERK OF THE COURT**

COMP
Thomas C. Michaelides #5425
1614South Maryland Parkway
Las Vegas, Nevada 89104
(702) 462-6161
(702) 412-6255 (fax)
tcm@tcmlawgroup.com

Attorney for Plaintiff
JENNA L. CARNEY

Eighth Judicial District Court

Clark County, Nevada

| | |
|---|---|
| JENNA L. CARNEY | Case No.: A-17-761858-C |
| Plaintiffs, | |
| vs. | Department II |
| IQ Data International, a Washington Corporation;  Sentry Recovery & Collections, Inc. a Nevada Corporation; MG Properties Group, a corporation of unknown place of incorporation, d/b/a Sedona Lone Mountain Apartments, d/b/a/ Azure Villas II apartments; Fore Property Company, A Nevada Corporation, d/b/a Glenbrook Terrace; Anza Management Company, a California Corporation, Picernne real Estate group, a privately held corporation of unknown state of incorporation d/b/a Pavillions at Providence Apartments, SW Landlords, a business entity of unknown form, The Crossings at Lake Mead, an apartment complex of unknown form or identity of ownership, and Does 1 through 10 and Roe corporations 11 through 20, Inclusive. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| Defendants. | |

-1-

Plaintiff Alleges:

1.  . Plaintiff is an individual who has at all times resided outside of Clark County and the State of Nevada.

2.  During a period of time beginning in the summer of 2016 until September, 2016 plaintiff began to learn of adverse reports on her credit report from sources that plaintiff could not recognize, nor determine where or why they were the adverse notations were being made.

3.  In the course of plaintiff's attempts to determine the source and reasons for the adverse reports on her credit report, she learned that she had the target of identity theft in Las Vegas, Nevada.

4.  Plaintiff learned that the identity theft resulted in an unknown individual using her social security number and falsified documents to enter into leases for apartments in Clark County, Nevada.

5.  Prior to determining the source(s) of the adverse credit report(s), a number of legal actions for evictions from the apartments leased by the unknown individual posing as plaintiff had been filed and reduced to adverse judgments of possession in favor of the property owners and adverse to plaintiff herein.

6.  Plaintiff retained a credit monitoring service called LIFELOCK shortly after discovering the unexplained adverse credit reports, in June, 2016.

7.  The eviction actions and concomitant judgments of possession caused adverse credit reports to be made on the credit history of plaintiff herein, not the individual who posed as plaintiff and fraudulently obtained access to apartments via leases using plaintiff's identity.

8.  Plaintiff herein promptly sought legal representation to initiate the processes necessary to reverse the judgments and correct the adverse credit reports caused by invalid leases obtained from the defendant property owners by the unidentified individual who

appropriated the plaintiff's identity without consent, permission or valid authorization of any kind.

9. In the course of reversing the judgments and adverse credit reports that were generated by various apartment complexes owned by the defendants, plaintiff learned that the true identity of the person who posed as plaintiff is in actually a convicted felon whose true name is Earnestine McMichael. Her felony conviction is case No. C257808 out of the Eighth Judicial District Court in Las Vegas, Nevada. The judgment of conviction was filed April 12, 2010.

10. The plaintiff is Caucasian.

11. The individual who presented herself as the plaintiff actually named Earnestine McMichael is African American.

12. Plaintiff has never sought or obtained a Nevada Driver's license.

13. Defendant MG Properties Group d/b/a Sedona at Lone Mountain Apartments engaged in eviction proceedings throughout 2016 against the plaintiff in the North Las Vegas Justice Court. These cases are: 16EN001753, 16EN001468, and 16EN001088.

14. Defendant MG Properties Group d/b/a Azure Villas II apartments engaged in eviction proceedings against plaintiff in 2017 in Case No. 17EN000198 in the North Las Vegas Justice Court.

15. Defendant Fore Properties d/b/a Glenbrook Terrace Apartments engaged in eviction proceedings against plaintiff in 2016 and continuing into 2017 in North Las Vegas Justice Court case no. 16EN001313.

16. The evictions described in ¶¶'s 14 and 15 were prosecuted in the names of apartment complexes with leases that were fraudulently obtained.

17. Plaintiff never actually or in fact entered into any leases with the defendants who initiated the evictions described in ¶¶'s 14 and 15.

18. Plaintiff is informed, believes and thereupon alleges that the defendant corporations as described in ¶¶'s 14 and 15 failed to train, supervise or hire persons who were competent to perform a standard background check to ascertain the true and correct

1   identity of the person who in fact sought and obtained access to the various properties

2   as described in the eviction complaints in ¶¶'s 14 and 15.

3   19. Plaintiff is informed, believes and thereupon alleges that the defendant corporations

4   identified in ¶¶'s 14 and 15 failed to take proper steps to properly ascertain the true

5   identity of the person holding herself out to be plaintiff, whether these actions or

6   omissions to perform proper verification of identity and credit worthiness was done by

7   employees, or others retained to perform these tasks.

8   20. Defendant Picerne Real Estate Group incorporation d/b/a Pavillions at Providence

9   Apartments (Hereinafter PICERNE) leased number of apartments to the individual

10   posing as the plaintiff in Clark county, Nevada.

11   21. Plaintiff is informed, believes and thereupon alleges that the defendant PICERNE

12   failed to train, supervise or hire persons who were competent to perform a standard

13   background check to ascertain the true and correct identity of the person who in fact

14   sought and obtained access to the various properties as in ¶ 20.

15   22. Defendant Picerne Real Estate Group incorporation d/b/a Pavillions at Providence

16   Apartments engaged in a number of evictions related to the properties that were leased

17   to the individual posing as the plaintiff. These are case Nos. 16E007453, 16E013929,

18   16E13003, and 16E15375 in the Las Vegas Nevada Justice Court.

19   23. During the course of, or following the conclusion of some or all of the case described

20   in ¶21, PICERNE hired defendant Sentry Recovery & Collections, Inc. (hereinafter

21   SENTRY) to pursue collections for alleged unpaid back rent from plaintiff.

22   24. Had either of defendants PICERNE and/or SENTRY done proper verification of the

23   rental applicant that resulted in the now unpaid rent, these defendants would have

24   learned that the plaintiff was not the correct party to the lease and concomitantly,

25   never owed them any money. Defendants PICERNE and SENTRY have caused a

26   negative entry on the plaintiff's credit history, and continue to maintain this negative

27   claim as to the plaintiff's credit history despite having been informed of the identity

28

1  theft and the fact plaintiff was never an actual party to any leasing agreement with

2  PICERNE.

3  25. Defendant The Crossings at Lake Mead Apartment Complex engaged in an eviction

4  related to a property that was leased to the individual posing as the plaintiff.  This is

5  Case Nos. 16E013929, in the Las Vegas Nevada Justice Court.

6  26. Plaintiff is informed, believes and thereupon alleges that the defendant The Crossings

7  at Lake Mead Apartment Complex failed to train, supervise or hire persons who were

8  competent to perform a standard background check to ascertain the true and correct

9  identity of the person who in fact sought and obtained access to the various properties

10  as in ¶ 25.

11  27. During the course of, or following the conclusion of some or all of the case described

12  in ¶25, defendant The Crossings at Lake Mead Apartment Complex hired defendant

13  Sentry Recovery & Collections, Inc. (hereinafter SENTRY) to pursue collections for

14  alleged unpaid back rent from plaintiff.

15  28. Had either of defendants The Crossings at Lake Mead Apartment Complex and/or

16  SENTRY done proper verification of the rental applicant that resulted in the now

17  unpaid rent, these defendants would have learned that the plaintiff was not the correct

18  party to the lease and concomitantly, never owed them any money.Defendants The

19  Crossings at Lake Mead Apartment Complex and SENTRY have caused a negative

20  entry on the plaintiff's credit history, and continue to maintain this negative claim as to

21  the plaintiff's credit history despite having been informed of the identity theft and the

22  fact plaintiff was never an actual party to any leasing agreement with The Crossings at

23  Lake Mead Apartment Complex.

24  29. Defendant Anza Management Company, (hereinafter, ANZA) engaged in an eviction

25  related to a property that was leased to the individual posing as the plaintiff.  This is

26  Case Nos. 16E010222, in the Las Vegas Nevada Justice Court.

27  30. Plaintiff is informed, believes and thereupon alleges that the defendant The Crossings

28  at Lake Mead Apartment Complex failed to train, supervise or hire persons who were

competent to perform a standard background check to ascertain the true and correct identity of the person who in fact sought and obtained access to the various properties as in ¶ 30.

31. Had defendant ANZA done proper verification of the rental applicant that resulted in the now unpaid rent, these defendants would have learned that the plaintiff was not the correct party to the lease and concomitantly, never had any basis to seek a judgment of possession, nor cause plaintiff to obtain counsel and pursue reversal of the adverse judgment.

32. Defendant SW Landlord(s) engaged in a number of evictions related to the properties that were leased to the individual posing as the plaintiff. These are case Nos. 16E018002, 16E020556, and 16E12237 in the Las Vegas Nevada Justice Court.

33. During the course of, or following the conclusion of some or all of the case described in ¶32, defendant SW Landlord(s) hired defendant IQ Data International (hereinafter IQ DATA) to pursue collections for alleged unpaid back rent from plaintiff.

34. Had either of defendants SW Landlord(s)and/or IQ DATA done proper verification of the rental applicant that resulted in the now unpaid rent, these defendants would have learned that the plaintiff was not the correct party to the lease and concomitantly, never owed them any money. Defendants SW Landlord(s) and IQ DATA have caused a negative entry on the plaintiff's credit history, and continue to maintain this negative claim as to the plaintiff's credit history despite having been informed of the identity theft and the fact plaintiff was never an actual party to any leasing agreement with SW Landlord(s).

35. Defendant Does 1 through 10, inclusive, and Defendant Roes Corporations 11 through 20 are sued fictitiously at this time because either their identity, whether corporate, individual, or an association, or the basis for their liability, or both, is unknown at this time. Plaintiff shall seek leave to amend this complaint to set forth the identity and basis for any and all Doe defendants upon discovery of their identity

1  or basis for liability, to set forth their true and correct name and conduct giving rise to liability

2  in place and instead of their present Doe identity.

3

4                              First Cause of Action

5                    Violation of the Fair Credit Reporting Act

6

7      36. Plaintiff realleges and incorporates ¶¶'s 1-35 as though fully set forth herein.

8      37. Plaintiff is a protected individual within the meaning of the Fair Credit Reporting Act.

9      38. Defendants, and each of them, violated the plaintiff's rights under the Fair Credit

10         Reporting Act when they failed to properly determine the true identity of the

11         individual to whom they provided access to their respective properties via a leasehold

12         agreement and then engaging in litigation to evict the fraudulent tenant from their

13         properties, and in the process incorrectly, improperly and unlawfully named the

14         plaintiff as a defendant in their eviction actions.

15     39. Defendant collections companies violate and continue to violate the Fair Credit

16         Reporting Act by continuing to maintain false and incorrect negative entries in the

17         plaintiff's credit history.

18     40. Defendants' actions described herein have caused damages $15,000.00 to the plaintiff.

19

20                             Second Cause of Action

21                 Violation of the Fair Debt Collections Practices Act

22

23     41. Plaintiff realleges and incorporates ¶¶'s 1-40 as though fully set forth herein.

24     42. Plaintiff is a protected individual within the meaning of the Fair Debt Collections

25         Practices Act.

26     43. Defendants, and each of them, violated the plaintiff's rights under the Fair Debt

27         Collections Practices Act when they failed to properly determine the true identity of

28         the individual to whom they provided access to their respective properties via a

leasehold agreement and then engaging in litigation to evict the fraudulent tenant from their properties, and in the process incorrectly, improperly and unlawfully named the plaintiff as a defendant in their eviction actions.

44. Defendant collections companies violate and continue to violate the Fair Debt Collections Practices Act by continuing to maintain false and incorrect negative entries in the plaintiff's credit history.

45. Defendants' actions described herein have caused damages $15,000.00 to the plaintiff.

### Third Cause of Action
### Violation of the Nevada Deceptive Trade Practices laws

46. Plaintiff realleges and incorporates ¶¶'s 1-45 as though fully set forth herein.

47. Defendants actions as set forth *supra*, violated and continue to violate the plaintiff's rights under the relevant statutes, N.R.S. § 598.746 et seq.

48. Defendants' actions described herein have caused damages in excess of $15,000.00 to the plaintiff.

### Fourth Cause of Action
### Negligence

49. Plaintiff realleges and incorporates ¶¶'s 1-48 as though fully set forth herein.

50. Defendants and each of them owed plaintiff a duty of care to properly, professionally and correctly perform those tasks necessary to determine the true identity of all prospective tenants.

51. Defendant collection agencies owed a duty of care to promptly investigate and correct any incorrect entries on the plaintiff's credit history that they or their clients may have placed or casued to be placed on the plaintiff's credit history.

52. Defendants, and each of them, breached their respective duties to plaintiff by failing to properly verify the potential tenant's identity correctly and/or failing to correct

1    incorrect and erroneous entries on the plaintiff's credit history due their error of their

2    client's error(s)

3    53. Defendants conduct as described in the complaint has injured the plaintiff financially

4    and otherwise.

5    54. Plaintiff has suffered damages in excess of $15,000.00 as a result of the defendants'

6    conduct.

7

8  Wherefore, Plaintiffs pray for judgment as follows:

9

10   1.  Special damages according to proof at time of trial;

11   2.  General damages according to proof at time of trial;

12   3.  Punitive damages according to proof at time of trial and as permitted by law;

13   4.  Injunctive relief as necessary to remove all adverse information on plaintiff's credit

14   report(s) due to the consequences of the identity theft which victimized plaintiff;

15   5.  All costs and fees associated with this litigation as allowed by law;

16   6.  All such other relief as this Court may deem fitting and proper.

17

18  Dated: November 7, 2017

19                                 Respectfully submitted,

20                                 By: /s/ Thomas C. Michaelides

21                                 Thomas C. Michaelides # 5425
22                                 1614 South Maryland Parkway
                                   Las Vegas, Nevada 89104
23                                 (702) 462-6161

24                                 Attorney for plaintiff:
25                                 Jenna L. Carney

26

27

28

-9-

Electronically Filed
12/6/2017 4:01 PM
Steven D. Grierson
CLERK OF THE COURT

NOA
SCOTT B. OLIFANT, ESQ.
Nevada Bar No. 7471
1614 S. Maryland Pkwy.
Las Vegas, Nevada 89104
Telephone:    (702) 462-6161
Facsimile:    (702) 413-6255
tcm@tcmlawgroup.com
*Attorney for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JENNA L. CARNEY | Case No.: A-17-761858-C |
| Plaintiffs, | |
| vs. | Department II |
| IQ Data International, a Washington Corporation;  Sentry Recovery & Collections, Inc. a Nevada Corporation; MG Properties Group, a corporation of unknown place of incorporation, d/b/a/ Sedona Lone Mountain Apartments, d/b/a/ Azure Villas II apartments, Fore Property Company, a Nevada Corporation, d/b/a Glenbrook Terrace; Anza Management Company, a California Corporation, Picernne real Estate group, a privately held corporation of unknown state of incorporation d/b/a Pavillions at Providence Apartments, SW Landlords, a business entity of unknown form, The Crossings at Lake Mead, an apartment complex of unknown form or identity of ownership, and Does 1 through 10 and Roe corporations 11 through 20, Inclusive. | |
| Defendants. | |

## NOTICE OF APPEARANCE

1

TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff, by and through counsel, hereby gives notice that SCOTT B. OLIFANT, ESQ. of TCM LAW, enters this appearance as counsel for Plaintiff.

Dated this 1st day of December, 2017.

TCM LAW

By:   /s/Scott B. Olifant
      SCOTT B. OLIFANT, ESQ.
      Nevada Bar No. 7471
      1614 S. Maryland Pkwy
      Las Vegas, Nevada 89104
      *Attorneys for Plaintiff*

2